60 F.3d 1304
 33 Fed.R.Serv.3d 53
 KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM, Plaintiff-Appellee,
v.
REIMER & KOGER ASSOCIATES, INC., a Kansas Corporation;
Ronald Reimer, an individual; Kenneth H. Koger, an
individual; Clifford W. Shinski, an individual; Brent
Messick, an individual; Robert Crew, an individual; Frank
Morgan, an individual; Sherman Dreiseszun, an individual;
Leland Gerhart, an individual; I.I. Ozar, an individual;
Raymond Gifford, an individual; Harry S. Jonas, an
individual; Ralph E. Kiene, an individual; Randall M. Nay,
an individual; Frank Sebree, an individual; Tony Salazar,
an individual; Philip Pistilli, an individual; Michael K.
Russell, an individual; Gage & Tucker, a law partnership;
Peat, Marwick, Mitchell & Co., an accountancy firm; KPMG
Peat Marwick, an accountancy firm; Robert Spence, an
individual, Defendants.
Frank MORGAN; Sherman Dreiseszun; Leland Gerhart; I.I.
Ozar; Raymond Gifford; Ralph E. Kiene; Randall
M. Nay; Tony Salazar; Philip Pistilli,
Third-party plaintiffs,
v.
RESOLUTION TRUST CORPORATION, Third-party defendant,
Shook, Hardy & Bacon; Intervenor,
Blackwell Sanders Matheny Weary & Lombardi, L.C., Proposed
Intervenor-Appellant.
 No. 95-1294.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 4, 1995.
Decided July 27, 1995.
 
 Russell Scarritt Jones, Jr., Kansas City, MO, argued (R. Lawrence Ward on the brief), for appellant.
 Kenneth Philip Ross, Chicago, IL, argued (Robert F. Coleman, Eugene J. Schiltz, Elizabeth R. Schenkier, Eugene I. Pavalon, and Geoffrey L. Gifford, on the brief), for appellee.
 Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 Blackwell Sanders Matheny Weary & Lombardi, L.C.,[1] appeals from an order of the district court denying its motion to intervene in a pending civil suit brought by the Kansas Public Employees Retirement System against various defendants. See Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assoc., No. 92-0922-CV-W-9 (W.D.Mo. Dec. 29, 1994). We reverse.
 
 
 2
 The KPERS litigation was filed in 1991[2] and has previously been before this court.[3] On September 26, 1994, KPERS' counsel sent a letter to Blackwell Sanders, informing it of KPERS' intent to join Blackwell Sanders as a party defendant in the case pending in the Western District of Missouri. KPERS enclosed a copy of the Fifth Amended Complaint and a draft of three additional counts which KPERS proposed to bring against Blackwell Sanders. The three counts alleged that Blackwell Sanders represented KPERS in connection with its first $15 million investment in Home Savings Association; that Blackwell Sanders committed professional negligence in that capacity; that Blackwell Sanders breached various fiduciary duties; and that Blackwell Sanders "participated in" Reimer & Koger's breach of trust. The letter invited Blackwell Sanders to discuss resolution of the case, and stated that KPERS would seek leave to file the additional counts on October 14, 1994. Instead, on October 14, 1994, KPERS' counsel informed Blackwell Sanders that KPERS intended to file the claims in a separate suit in state court in Shawnee County, Kansas. Blackwell Sanders then filed a motion to intervene as of right in the Western District case.
 
 
 3
 The district court entered an order denying the motion to intervene. Slip op. at 13.[4] The court first recited Federal Rule of Civil Procedure 24(a)(2), which provides for intervention of right upon timely application if the disposition of the action "may as a practical matter impair or impede the applicant's ability to protect" its interest, unless its interest is adequately represented by existing parties. The district court ruled that Blackwell Sanders' motion was timely, id. at 5, but found that "Blackwell Sanders does not have an interest in the pending action which would be impaired absent its intervention." Id. at 9 (emphasis added). In so doing, the court rejected Blackwell Sanders' argument that adverse rulings in the Western District might affect later proceedings through application of res judicata, collateral estoppel, or stare decisis. Id. at 9-11. The court stated that Blackwell Sanders "failed to present any specific legal issues common to the claims pending [in the Western District of Missouri] and those which will be asserted against Blackwell Sanders." Id. at 10. The court further observed that "it is a fundamental principle ... that the interpretation of state law by a federal court sitting in another state has limited precedential weight in the former state." Id. The court held that, "because the claims against Blackwell Sanders arise under Kansas law, the adverse impact of stare decisis in a later proceeding does not necessitate a finding that Blackwell Sanders possesses an interest in the litigation that will be practically impaired but for its involvement." Id. (emphasis added). Further, the court noted that the pending litigation involved conventional claims of negligence and misrepresentation and that the stare decisis effect of cases which are not of first impression is minimal. Id. at 11. The court concluded that it was "unlikely that Blackwell Sanders would be adversely affected in a later proceeding by rulings in the present one." Id. (emphasis added). In light of this conclusion, the court declined to address the representation issue, id. at 12 n. 8, and denied Blackwell Sanders' motion to intervene. Id. at 13.
 
 
 4
 The district court entered its order denying intervention on December 29, 1994. On January 6, 1995, KPERS filed an action against the partnership of Blackwell Sanders in the district court of Shawnee County, Kansas. Kansas Pub. Employees Retirement Sys. v. Blackwell Sanders Matheny Weary & Lombardi, No. 95CV20 (3d Judicial Dist.Ct., Shawnee County, Kansas).
 
 I.
 
 5
 Intervention of right is governed by Rule 24(a)(2), which provides:
 
 
 6
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 7
 Fed.R.Civ.P. 24(a)(2).
 
 
 8
 We review de novo the district court's denial of Blackwell Sanders' motion to intervene as of right. Arrow v. Gambler's Supply, Inc., 55 F.3d 407, 409 (8th Cir.1995); Mille Lacs Band of Chippewa Indians v. Minnesota, 989 F.2d 994, 998 (8th Cir.1993). We review for abuse of discretion the district court's ruling on the timeliness of that motion. Arrow, 55 F.3d at 409. We construe Rule 24 liberally, Arkansas Elec. Energy Consumers v. Middle S. Energy, Inc., 772 F.2d 401, 404 (8th Cir.1985), and resolve any doubts in favor of the proposed intervenors. Sierra Club v. Robertson, 960 F.2d 83, 86 (8th Cir.1992) (allowing intervention "serves the judicial system's interest in resolving all related controversies in a single action"); Kozak v. Wells, 278 F.2d 104, 112 (8th Cir.1960).
 
 
 9
 We have consistently applied Rule 24 less stringently than did the district court. For example, in Kozak, 278 F.2d 104, retired Supreme Court Justice Blackmun, then a judge for the Eighth Circuit, outlined the Rule's conditions for intervention of right: "(1) that the application be timely; (2) that the representation of the applicant's interest by existing parties is or may be inadequate; and (3) that the applicant is or may be bound by a judgment in the action." Id. at 108 (emphasis added). As noted by Judge Blackmun, the rule then in effect conditioned intervention of right on a finding that the proposed intervenor "is or may be bound by a judgment in the action." Fed.R.Civ.P. 24(a)(3)(1965). In 1966, the Supreme Court amended the rule to require only that "the disposition of the action may as a practical matter impair or impede the applicant's ability to protect [their] interest." Fed.R.Civ.P. 24(a)(2). We have since held that a timely motion to intervene as of right should be granted where: "(1) the proposed intervenor has an interest in the subject matter of the action; (2) the interest may be impaired; and (3) the interest is not adequately represented by an existing party to the action." Sierra Club, 960 F.2d at 85 (emphasis added).
 
 
 10
 Blackwell Sanders argues that the district court applied an unduly restrictive interest test. As we have consistently held, Rule 24(a)(2) requires only that disposition of the action "may as a practical matter impair or impede the applicant's ability to protect [its] interest." See, e.g., Mille Lacs Band, 989 F.2d at 998, 1001 (reversing district court's denial of two motions to intervene as of right where "the result of the litigation ... may affect" or "may impair" the interests of the proposed intervenors (emphasis added)); Jenkins v. Missouri, 967 F.2d 1245, 1248 (8th Cir.) ("The language of the rule itself contemplates that the affected party can intervene in proceedings that 'may' affect him...."), cert. denied, --- U.S. ----, 113 S.Ct. 811, 121 L.Ed.2d 684 (1992); Sierra Club, 960 F.2d at 85 (paraphrasing the rule as requiring that "the interest may be impaired" (emphasis added)); Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1, 738 F.2d 82, 84 (8th Cir.1984) (per curiam) ("The rule does not require, after all, that appellants demonstrate to a certainty that their interests will be impaired in the ongoing action. It requires only that the disposition of the action 'may as a practical matter' impair their interests." (emphasis added)). But see Corby Recreation, Inc. v. General Elec. Co., 581 F.2d 175, 176-77 (8th Cir.1978) (per curiam) (stating that "it must appear that [the applicant's] interest will be impaired by the disposition of the suit;" reversing district court's denial of motion to intervene as of right where the applicant "could well be disadvantaged" by the stare decisis effect of the result of the litigation).
 
 
 11
 The district court's use of the words "would" and "will be" demonstrates a standard that conflicts not only with the language of the Rule, but with numerous holdings of this court. Contrary to the district court's holding, Blackwell Sanders has demonstrated an interest in the pending action which may be impaired absent its intervention. KPERS seeks to hold Blackwell Sanders liable for damages related to the Home Savings transactions. These transactions underlie the litigation into which Blackwell Sanders seeks to intervene. Furthermore, as KPERS' pleadings in the Kansas state case show, the liability KPERS seeks against Blackwell Sanders is joint and several with defendants named in the Western District case.[5] Blackwell Sanders need not show that, but for its intervention, its interest "would be" impaired by the operation of res judicata, collateral estoppel, or stare decisis, but rather only that its interest "may be" so impaired. This it has successfully done.[6]
 
 II.
 
 12
 The district court held that Blackwell Sanders' motion to intervene was timely. KPERS argues that this was an abuse of discretion. The court found that "Blackwell Sanders filed suit on October 18, 1994, less than a month after it first learned that KPERS intended to assert claims against it, and only four days after it first learned that KPERS intended to seek recovery in another venue." Slip op. at 6. The district court did not abuse its discretion in finding the motion timely.
 
 III.
 
 13
 Finally, Blackwell Sanders has demonstrated that its interest is not adequately represented by existing parties. This requirement is met by a minimal showing that representation "may be" inadequate. Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972); Mille Lacs Band, 989 F.2d at 999. KPERS alleges adequate representation of any interest held by Blackwell Sanders because "Blackwell Sanders has already filed a motion in the state court proceeding challenging the constitutionality of the Kansas ten-year statute of limitations, raising the same grounds and making virtually identical arguments" as did the defendants in the Western District. However, "tactical similarity" between the legal positions of Blackwell Sanders and the Western District defendants "does not assure adequate representation." See Sierra Club, 960 F.2d at 86. Rather, to determine the adequacy of representation, we must compare the interests of Blackwell Sanders with the interests of the current defendants. Id. Where those interests are disparate, even though directed at a common legal goal, e.g., the avoidance of liability, intervention is appropriate. Id. Here, KPERS has alleged joint and several liability. Under this scenario, the interests of the named defendants are bound to be disparate with those of Blackwell Sanders, and intervention is proper.
 
 IV.
 
 14
 Under our holding in Sierra Club, we must resolve any remaining doubts regarding the propriety of intervention in its favor. Id. at 86. We reverse the judgment of the district court and remand for proceedings in accordance with this opinion.
 
 
 
 [1]
 For simplicity, we will use "Blackwell Sanders" to refer interchangeably to the former partnership or the limited liability company. See infra n. 6. Where the differentiation is material, we will specify the appropriate entity
 
 
 [2]
 KPERS originally filed suit in the state district court in Shawnee County, Kansas, against Reimer & Koger Associates, Inc. (KPERS' former investment adviser) to recover damages arising from KPERS' purchase of $65 million of Home Savings Association debentures. KPERS amended the suit to name, among others, KPMG Peat Marwick (KPERS' auditors); Gage & Tucker (a law firm which KPERS alleges that Reimer & Koger retained to represent KPERS in all but the first Home Savings investment); Michael K. Russell, (KPERS' former board chairman); and several former officers and directors of Home Savings Association. The officers and directors impleaded the RTC. Acting under 12 U.S.C. Sec. 1441a(l )(3) (1994), the RTC removed the case from the Kansas state court to the federal district court for the Western District of Missouri. The district court dismissed the RTC from the case, but continued to exercise supplemental jurisdiction. The case remains pending in that court
 
 
 [3]
 See, e.g., Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assoc., 61 F.3d 608 (8th Cir.) (filed today); Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys., 57 F.3d 638 (8th Cir.1995); Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assoc., 4 F.3d 614 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 2132, 128 L.Ed.2d 862 (1994)
 
 
 [4]
 At the same time, the court granted a similar motion filed by the law firm of Shook, Hardy & Bacon, and stayed a motion for intervention filed by Boatmen's First National Bank of Kansas City, N.A. Slip op. at 13
 
 
 [5]
 Specifically, KPERS has alleged that Blackwell Sanders participated in two breaches of trust: one perpetrated by Reimer & Koger and one perpetrated by Michael K. Russell. Both are named defendants in the litigation pending in the Western District of Missouri
 
 
 [6]
 In accordance with Mo.Rev.Stat. Sec. 347.125 (1994), Blackwell Sanders converted its partnership into a limited liability company bearing the same name. The conversion became effective on September 23, 1994, before KPERS announced its intent to sue Blackwell Sanders
 KPERS makes much of the fact that no draft pleading, filed pleading or correspondence from KPERS mentions Blackwell Sanders as a limited liability company, but, rather, refers to Blackwell Sanders as a law partnership. This distinction is disingenuous. Missouri law vests the limited liability company with all of the former partnership's "rights, privileges, powers, debts, [and] causes of action." Mo.Rev.Stat. Sec. 347.125.3. Similarly, all of the former partnership's "duties, debts, liens, liabilities and rights of creditors" attach to the limited liability company. Mo.Rev.Stat. Sec. 347.125.4. Further, Blackwell Sanders, L.C., has admitted its responsibility for paying any judgment against the former partnership.