986 F.2d 1341
 142 L.R.R.M. (BNA) 2770, 124 Lab.Cas. P 10,567,
25 Fed.R.Serv.3d 228
 KIAMICHI RAILROAD CO., INC., Plaintiff-Appellant,
v.
NATIONAL MEDIATION BOARD, Patrick J. Cleary, Joshua M.
Javits, Kimberly A. Madigan, Members of the Board,
American Train Dispatchers Association,
Defendants-Appellees.
KIAMICHI RAILROAD CO., INC., Plaintiff,
v.
NATIONAL MEDIATION BOARD, Patrick J. Cleary, Joshua M.
Javits, Kimberly A. Madigan, Members of the Board,
American Train Dispatchers Association,
Defendants-Appellees,
William Self, Jerry R. Blackwood, Jeff E. Peltier, Howard R.
Forbus, Robby D. Leflore, Christopher D. Strange, Adam L.
Eudy, Gordon R. Frederick, Cyril L. Box, John R. Powell,
Timmy E. Coleman, Jerry W. Wilkinson, Otis D. Knight, Harold
E. Strange, Stephen R. Forbus, Chester K. Testerman, Gyle W.
Dale, Malin A. Pavelka, Glenn Allen, Intervenors-Appellants.
 Nos. 92-7079, 92-7081.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 23, 1993.
 
 1
 Joe Stamper and Thomas Hadley of Stamper, Otis & Burrage, Antlers, OK, for plaintiff-appellant.
 
 
 2
 Stuart M. Gerson, Asst. Atty. Gen., John W. Raley, Jr., U.S. Atty., William Kanter and Marc Richman, Attys., Appellate Staff, Civil Div., Dept. of Justice, Washington, DC (Ronald M. Etters, General Counsel, Nat. Mediation Bd., Washington, DC, of counsel), for defendant-appellee Nat. Mediation Bd.
 
 
 3
 Thomas A. Woodley, Erick J. Genser, Neil I. Ditchek of Mulholland & Hickey, Washington, DC, for defendant-appellee American Train Dispatchers Ass'n.
 
 
 4
 James T. Branam of Dennis & Branam, Antlers, OK, for intervenors-appellants.
 
 
 5
 Before LOGAN and MOORE, Circuit Judges, and BELOT,* District Judge.
 
 
 6
 BELOT, District Judge.
 
 
 7
 Plaintiff-appellant Kiamichi Railroad Co., Inc. (Kiamichi) appeals[1] from an order of the district court denying Kiamichi's request for a temporary restraining order and a temporary injunction against defendants, National Mediation Board and three of its members (collectively referred to as NMB) and American Train Dispatchers Association (ATDA). Kiamichi sought to enjoin defendants from holding an election to determine union representation of Kiamichi's employees. The district court found that it lacked "jurisdiction to review the class or craft determinations by the defendant NMB and its decision concerning plaintiff's employee representation dispute." Kiamichi R.R. Co. v. National Mediation Bd., No. CIV-92-152-S, slip op. at 3 (E.D.Okla. Mar. 31, 1992). In a separate order, the district court denied a motion to intervene, filed by nineteen of Kiamichi's employees (intervenors). Intervenors have appealed the denial of their motion to intervene. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm both the dismissal of Kiamichi's suit and the denial of intervenors' motion.
 
 
 8
 On October 25, 1991, ATDA filed an application with NMB alleging that representation disputes existed between two groups of Kiamichi's employees--trainmen and engineers. After investigating the representation dispute, NMB found that there were distinct classes of engineers and trainmen working for Kiamichi, and that representation disputes existed among the two classes. The Railway Labor Act, 45 U.S.C. § 152, Fourth, provides that the majority of any class of employees has the right to choose who shall represent the class. Acting under the authority of the Railway Labor Act, the NMB scheduled a representation election. The election occurred shortly after the district court dismissed Kiamichi's suit to enjoin the election. From the briefs filed in this appeal, it appears that a majority of the engineers, as well as a majority of the trainmen, voted for ATDA representation. As a result, NMB certified ATDA as the authorized representative of Kiamichi's engineers and trainmen. On appeal, Kiamichi challenges the NMB's decision to certify ATDA as the bargaining representative.
 
 
 9
 Kiamichi argued to the district court, and continues to argue on appeal, that it has only one class of employees--which it refers to as railroaders--who are all cross-trained and cross-utilized in different departments to respond to Kiamichi's varying business volume. The power to resolve disputes concerning class or craft designations for a representation election belongs to the NMB, however, and not to the federal courts. Switchmen's Union v. National Mediation Bd., 320 U.S. 297, 301, 64 S.Ct. 95, 97, 88 L.Ed. 61 (1943). Section 2, Ninth of the Railway Labor Act imposes upon NMB the duty to investigate a representation dispute. 45 U.S.C. § 152, Ninth. The Supreme Court has stated that NMB's decision is "reviewable only to the extent that it bears on the question of whether it performed its statutory duty to 'investigate' the dispute." Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Express & Station Employees v. Association for Benefit of Non-Contract Employees, 380 U.S. 650, 661, 85 S.Ct. 1192, 1198, 14 L.Ed.2d 133 (1965). The Court explained that NMB's duty is to investigate "as the nature of the case requires." Id. at 662, 85 S.Ct. at 1198.
 
 
 10
 In light of Supreme Court pronouncements on this issue, circuit courts have characterized judicial review of NMB actions as "one of the narrowest known to the law." See, e.g., International Ass'n of Machinists & Aerospace Workers v. Trans World Airlines, Inc., 839 F.2d 809, 811 (D.C.Cir.), cert. denied, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 40 (1988). Accordingly, federal courts have ruled that they lack jurisdiction to review class determinations made by NMB pursuant to its certification of a bargaining representative unless the complaining party shows "on the face of the pleadings that the certification decision was a gross violation of the Railway Labor Act or that it violated the constitutional rights of an employer, employee, or Union." Id.; see also Brotherhood of Maintenance of Way Employees v. Grand Trunk W. R.R., 961 F.2d 1245, 1249 (6th Cir.1992).
 
 
 11
 Turning first to whether NMB's certification decision was a gross violation of the Railway Labor Act, we agree with the district court that it was not. Specifically, we reject Kiamichi's argument that NMB failed to investigate as the nature of the case requires. As evidence that NMB's investigation was inadequate, Kiamichi argues that the ninety-day preponderance period chosen by NMB was not indicative of cross-training and cross-utilization of Kiamichi employees. According to Kiamichi, NMB fulfills its duty to investigate as the nature of the case requires only by looking at Kiamichi's "entire operating history and examin[ing] the functions which had been performed by all of its employees, not just the payroll records of 21 employees during a 90-day period." Appellant's Br. at 24. Kiamichi maintains that NMB failed even to inspect the rail properties and operations, and also failed to interview employees who had not worked as engineers or trainmen during NMB's ninety-day preponderance period.
 
 
 12
 Congress did not specify the manner or procedures by which NMB should conduct its investigation. See Association for Benefit of Non-Contract Employees, 380 U.S. at 662, 85 S.Ct. at 1198-99. Such matters are left to the discretion of NMB. Id. During its investigation, NMB met with Kiamichi and obtained employment records for a ninety-day period. NMB solicited statements, arguments, and evidence from Kiamichi. Although NMB recognized that Kiamichi's employees were cross-trained and that they may have worked in more than one class or craft, NMB concluded that certain employees preponderantly worked as trainmen, while others preponderantly worked as engineers. After carefully considering Kiamichi's arguments and reviewing NMB's decision, we conclude that NMB performed its statutory duty to investigate the dispute.
 
 
 13
 Kiamichi also argues that NMB failed to consider the Staggers Rail Act of 1980, Pub.L. No. 96-448, 94 Stat. 1895, when it performed its investigation. In general terms, in the Staggers Act Congress amended the Interstate Commerce Act to increase "rail carriers' flexibility in acquiring rail lines by granting the [Interstate Commerce] Commission the authority to implement regulations streamlining the regulatory process." Carol Moors Toth, Pittsburgh & Lake Erie Railroad v. Railway Labor Executives' Association: the Movement to a Competitive Railroad Industry, 39 Cath.U.L.Rev. 1081, 1083 (1990). The Staggers Act "eliminated the need for companies acquiring rail lines to obtain Commission approval and made the railroad industry more economically competitive with other modes of transportation." Id. at 1097. Kiamichi maintains that NMB violated its statutory duty to investigate because its investigation did not further the general purposes of the Staggers Act. Kiamichi, however, fails to explain how the Staggers Act limits NMB's authority, or how NMB's investigation violated a specific provision of the Railway Labor Act, as amended by the Staggers Act. We conclude, therefore, that Kiamichi has failed to demonstrate that NMB's decision was a "gross violation of the Railway Labor Act."
 
 
 14
 Kiamichi also argues that federal court jurisdiction is proper because NMB's certification decision violated the due process rights of Kiamichi and its employees. Appellant's Br. at 2, 25. This due process argument, however, is premised upon NMB's allegedly inadequate investigation. Because Kiamichi has not shown that NMB violated the Railway Labor Act in conducting the investigation, its due process argument lacks merit.
 
 
 15
 Finally, with regard to whether the district court improperly denied intervenors' motion to intervene, we hold that it did not. Intervenors, the vast majority of whom were not within the class of employees eligible to vote in the representation election, alleged in their motion that they were improperly excluded from the class of eligible voters and, further, that NMB's certification of ATDA as the bargaining representative could possibly prevent intervenors from being cross-utilized in all departments, as Kiamichi had promised. The district court denied the motion without giving its reasons. We may affirm the district court on grounds supported by the record and law, but not relied upon by the district court. United States v. Corral, 970 F.2d 719, 726 n. 5 (10th Cir.1992).
 
 
 16
 Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a party may intervene as of right
 
 
 17
 when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 18
 To intervene as a matter of right, intervenors must show that Kiamichi may represent their interests inadequately and that disposition of this action will impair intervenors' ability to protect their interests. Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872 (10th Cir.1986).
 
 
 19
 Intervenors claim that if they had been allowed to intervene, they "would have been able to better demonstrate ... that the accuracy of the purported NMB investigation was not existent." Intervenors' Br. at 6. However, upon comparing intervenors' and Kiamichi's complaints, we note that each of intervenors' claims had been advanced by Kiamichi on intervenors' behalf.[2] Intervenors failed to present the district court with specific reasons which would explain why intervenors' representation would be superior to Kiamichi's representation. Intervenors' objective, like Kiamichi's objective, is to demonstrate that NMB failed to adequately investigate, and, because of that failure, NMB inappropriately categorized Kiamichi's employees. Because intervenors have not shown how their objectives differed from Kiamichi's, and intervenors have otherwise failed to show that Kiamichi may represent their interests inadequately, we hold that intervenors cannot intervene as of right under Fed.R.Civ.P. 24(a). See Bottoms, 797 F.2d at 872 ("[C]ourts find representation adequate ... when the objective of the applicant for intervention is identical to that of one of the parties.").
 
 
 20
 Although their basis for intervention is not entirely clear from their motion, in their appellate brief intervenors refer to the rule which allows permissive intervention, Fed.R.Civ.P. 24(b). Permissive intervention is a matter within the district court's discretion, and we will not reverse the district court's ruling absent a clear abuse of discretion. United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). Intervenors filed their motion on the morning of the district court's hearing. Thus, we question whether their motion was timely, as required by Rule 24(b). But even assuming the motion was timely, intervenors have failed to explain how the denial of intervention could constitute an abuse of discretion.
 
 
 21
 In conclusion, we find no error in the district court's denial of the motion to intervene, or in its determination that it lacked jurisdiction to review NMB's certification of ATDA as bargaining representative. The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.
 
 
 
 *
 Honorable Monti L. Belot, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument
 
 
 [2]
 At the hearing in the district court, and in their brief on appeal, intervenors attempt to raise an argument which had not been previously advanced by Kiamichi on their behalf: they maintain that their "first amendment right to freedom to associate or not to associate" was violated when they were improperly excluded from voting in the representation election. Intervenors' Br. at 11. This allegation did not appear in intervenors' motion, however
 Like Kiamichi's due process claim, intervenors' First Amendment claim is premised upon NMB's allegedly inadequate investigation. Because we have found that NMB's investigation was adequate, we need not consider whether employees who do not belong to the class of eligible voters may assert a First Amendment freedom of association claim. Cf. Trans World Airlines, 839 F.2d at 812 (holding that disenfranchised employees have no freedom of association claim).